_____

|   |   |   |
|---|---|---|
| FRANK T. DIXON and | ) | |
| DEANA M. DIXON, | ) | |
|     Plaintiffs, | ) | Civil Action No. 1:11-cv-10368-WGY |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A. f/k/a | ) | |
| WACHOVIA MORTGAGE, FSB, f/k/a | ) | |
| WORLD SAVINGS BANK, FSB | ) | |
|     Defendant, | ) | |

_____)

## PRETRIAL MEMORANDUM

The Plaintiffs, Frank T. Dixon and Deana M. Dixon ("Plaintiffs" or "Dixons"),

and the Defendant, Wells Fargo Bank, N.A., f/k/a Wells Fargo Mortgage, FSB, f/k/a

World Savings Bank, FSB ("Defendant" or "Wells Fargo"), offer the following Joint

Pretrial Memorandum.

## (1) CONCISE SUMMARY OF EVIDENCE TO BE OFFERED

**Plaintiffs' Concise Summary of Evidence to be Offered:**

Documentary Evidence:

(1)    First and foremost, Plaintiffs' will offer as exhibits Defendant's ("WFB") written offers and promises to the Plaintiffs by letter and documents sent on November 16, 2009, that:

    (a)    "If you qualify under the federal government's Home Affordable Modification Program [HAMP] and comply with the terms of the Home Affordable Modification Program Trial Period Plan [TPP], **we will modify your mortgage loan and you can avoid foreclosure**. Plaintiffs' testimonial evidence will establish that, through Defendant's acts of malfeasance and nonfeasance, and its unfair and deceptive practices, including their complete and utter failure to follow the federal governments directives, rules and regulations, the Plaintiffs were deprived of the ability to meet the conditions precedent to a modification or, in the alternative, to be promptly notified of

their ineligibility, as the case may be. Exs. 2 and 6. (Helping You Stay In Your Home)

    (b) "In order to qualify for [Wells Fargo's] ("Servicer") **offer to enter into an agreement to modify my loan under the federal government's Home Affordable Modification program . .** [plaintiffs shall submit this form]" Exs. 2 and 6.

    (c) The requested documentation is returned on November 23, 2009 (prior to the December 16, 2009 deadline). Ex. 2 (11/23/09 FAX of: (1) completed and signed Hardship Affidavit, (2) completed and signed 4506-T, (3) W2s, (4) 2008 Form 1040 [not signed] (5) pay stub Frank, pay stub Deana, (6) 12/31/08 balance sheet of Double Dixon, Inc., (7) Double Dixon, Inc. P&L for 2008, (8) Double Dixon, Inc. 2008 corporate tax returns, (9) Double Dixon, Inc. 9/30/09 Balance Sheet, (10) Double Dixon 9/30/09 P&L, (11) Package and letter that was sent to them with notations on them)

(2)    The Plaintiffs will also introduce documents that were faxed on September 24, 2009 to defendant that respond precisely to Defendant's first document request made during the course of Deana Dixon's initial telephone communication with Defendant on September 17, 2009. Ex. 1 and Ex. 4 (the 9/24/09 fax and WFB call logs respectively) The Plaintiffs will also will also introduce a fax transmission of 12/30/09 (Ex. 3) which is responsive to Defendant's erroneous request for documentation (i.e. under the Treasury directives, there were no missing documents as of 12/16/09 other than a second pay stub which is de minimis and, nonetheless, under the U.S. Treasury Directive, should have been specifically requested by Defendant in writing if needed.

(3)    Plaintiffs will also introduce the Defendant's call logs to evidence that the Defendant's did not even once attempt to contact the Plaintiffs on their cell phones. Ex. 5 Defendant's call attempts were not successful because all of their calls were made to either the Plaintiffs' restaurant, where there is no working answering machine, or to the land-line at the Plaintiffs' home, which has an unmonitored answering machine. No cell phone telephone call attempts were made. If they were, the Defendant's would have been able to communicate with the Plaintiffs.

Testimonial evidence:

(4)    In summary, Plaintiffs' will show that Mrs. Dixon diligently followed WFB's directions. They provided Wells Fargo with the necessary documents needed for a mortgage modification and made repeated phone calls to check on the status of their modification.  Despite these diligent steps, Wells Fargo failed to

follow the mandated HAMP Directives applicable to the time frame and thus failed to articulate with the required specificity the information that was necessary in order for a prompt determination be made as to whether or not the Dixons qualified for a modification. WFB's acts of malfeasance and nonfeasance, in breach of the specific promises and duties undertaken pursuant to WFB's own agreement, caused the Dixons to not be considered for a modification and denied them, at a minimum, a speedy decision on the modification which has led them to have incurred attorney fees in excess of $80,000 in order to save their home and to accumulate mortgage payment arrears that are now beyond their ability to pay, as well as emotional distress and turmoil perpetrated upon their family.

(5)     Plaintiff, Deana Dixon, will testify that the modification process actually began on or about September 17, 2009 when she called WFB (sometimes refereed to herein as Wachovia) to inquire about a loan modification because she and her husband were experiencing financial difficulties. Ex 4 (9/17/09 WFB call log-second entry).

(6)     Deana will further testify that she made the call on behalf of herself and her husband, and in all respects was acting on behalf of herself and on behalf of her husband, as his agent, with his knowledge and consent.

(7)     Deana will further testify that in the course of that telephone call, she was told, among other things, not to make any further mortgage payments, any arrears would be added to the loan balance, and to submit: (1) "2008 tax return with all schedules" (it is to be noted that no signature requirement was mentioned in the call-log notes) and (2) a year to date P&L [Deana will testify that she had no idea what a P&L was, it is inapplicable to her situation and also that no signature requirement was mentioned] **or [in the alternative to a P&L]** three months bank statements used for the business (loan number on each page). Id.

(8)     Deana will testify that she never told the bank she was self-employed and that the documents that she provided clearly show that she and her husband are salaried workers and owners of Double Dixon, Inc., a closely-held corporation that operates a restaurant doing business as "Frankie D's."

(9)     Deana will then testify that she told the WFB representative it would take a while to get the information because she needed to get it from her accountant and the accountant is further away. WFB assured Deana a delay of a couple of days was not a problem [the worst that would happen is that they would start up the file again]."

(10)    In reliance on WFB's instructions, Deana ceased making mortgage payments and immediately undertook the steps necessary to gather the requested documentation. On September 24, 2009, Deana fax transmitted the requested

documents comprised of the 2008 Federal tax return of the corporation which she and her husband own, and the corporate bank statements from the Rockland Trust for June, July and August of 2009 (in lieu of the inapplicable "P&L"). Ex 4 (9/24/09 entry) and Ex. 1 (the 9/24/09 fax transmittal)

(11)     Having heard nothing from WFB, three weeks later Deana called WFB to inquire as to whether her documents had been received. She was assured by WFB that the documents had indeed been received. No mention was made to her relative to any missing or inadequate documents. Ex 4 (10/13/09 entry-no notation in the log relative to a communication to Deana that there were missing documents) WFB assured her that her request was being reviewed and that if approved, send in first months payment with the modification agreement.

(12)     Deana will then testify that she never heard anything else from WFB so she called to follow up on November 16, 2009.  Ex. 4. (log) Deana will further testify that unbeknownst to her, her request for a modification had been closed November 3, 2009. Ex 4 (November 3, 2009 entry). She will further testify that she did not receive a 10/29/09 communication, and it is noted that the log does not indicate a call from her. Ex. 4

(13)     Deana will then testify that as a result of her follow up call on November 16, 2009, she was then interviewed all over again (which she found confusing-because she already did so on 9/17/09). She will then testify that shortly thereafter she then received a letter confirming the phone call of 11/16/09 together with: (1) a description of the "Making Home Affordable" program, (2) a hardship affidavit (confirming WFB's offer to enter into a modification under the "federal government's "Home Affordable Modification Program" ("HAMP"), (3) a Federal Form 4506-T ("Request for Transcript of Tax Return"). Ex 6. It is to be noted that the Hardship Affidavit specifically admits in the first paragraph thereof that Wells Fargo is making an offer to enter into an agreement to modify the Dixons loan under the Home Affordable Mortgage Program. Ex 6. Wells Fargo specifically admits that they have made an offer to enter into an "agreement." Deana Dixon will testify that she relied on that statement as well as the instructions to stop making mortgage payments in order to qualify.

(14)     Deana then will testify that in reliance on the letter, she continued to refrain from making any mortgage payments and promptly filled out and signed her (and, pursuant to her husband's permission, her husband's) signature, to the hardship affidavit and IRS Form 4506-T and thereupon faxed them to WFB on 11/23/09 together with: (1) W2s, (2) 2008 Form 1040 [not signed] (3) pay stub Frank, pay stub Deana, (4) 12/31/08 balance sheet of Double Dixon, Inc., (5) Double Dixon, Inc. P&L for 2008, (6) Double Dixon, Inc. 2008 corporate tax returns, (7) Double Dixon, Inc. 9/30/09 Balance Sheet, (8) Double Dixon,

Inc. 9/30/09 P&L, (9) "Making Home Affordable" letter that was sent to her with notations on it. Ex 2.

(15)    Deana will testify that she never received any communications from WFB relative to the 11/23/09 fax much less any communications specifically stating that there were any missing or requested documents.

(16)    On or about 12/16/09 Deana received a letter indicating that WFB had not received the 11/23/2009 faxed documents (which it is now undisputed they did receive (Ex. 2 (11/23/09 fax) and Ex. 4 (the 12/8/09 log)). On or about 12/21/2009 Deana called to see what the status was regarding the modification. Deana will testify that she was never told that WFB needed a signed and dated P&L or 08 tax returns. Ex. 4 (entry on 12/21/09).

(17)    In response to the 12/16/09 letter (which was not specific as to what was missing and which was not in accordance with the Treasury's suggested implementation date of its Supplemental Directive) as well as Deana's follow up call on 12/21/09, Deana faxed what she believed to be responsive to WFB's request on 12/30/09. Ex. 3. (65 page fax).

(18)    Deana will then testify that she never heard anything back from WFB. After again not hearing from WFB, Deana called WFB on 2/18/10 in complete and utter frustration. Deana will testify that WFB encouraged her not to give up and advised her that they would resubmit her documentation.

(19)    From 2/18/10 until 5/19/10 Deana never heard from WFB again relative to the modification. The letter of 2/20/10 that WFB says was sent to Deana and Frank Dixon was never received by her. In addition, the prior notice referenced in the alleged 2/20/10 letter listing the **specific** documents requested was never ever received.

(20)    To corroborate the testimony of Deana relative to the fact that WFB never sent the alleged denial letter of 2/20/10 to Deana and Frank Dixon, a motion is pending before the Court for a determination that the attorney client privilege has been waived relative to this issue. The motion seeks leave to use an email to impeach the testimony of any Wells Fargo witness that claims that denial letters were sent.

(21)    On or about 5/19/10, having heard nothing from Wells Fargo, Deana Dixon met with and engaged Attorney Gerald Phelps to determine what was going on with the modification. In that regard, Deana, Attorney Phelps, and Steve Chandler, a paralegal in attorney Phelps' office initiated a conference call with WFB. Deana will testify that on or about 5/19/10 she participated in a telephone conference with Attorney Phelps, Steve Chandler and a representative of Wachovia. The sum and substance of that call was to ascertain what information Wachovia needed, if anything, in order for the

Dixons to complete their loan modification application. Wachovia indicated that they had indeed received documentation from the Dixons including, inter alia, (1) a "Hardship Affidavit", (2) IRS Form 4506T (request for transcripts of tax returns), and (3) the Dixons 2008 Form 1040. Attorney Phelps thereupon requested that Wachovia send him their "loan modification package" together with all documents received to date and copies of their policies and guideline so as to have a better idea of where the Dixons stood in the process. Wachovia indicated that they needed an authorization from the Dixons before they could speak with him any further and that an approximate 30-minute interview was needed to be conducted before they would send a "loan modification package." This testimony will be corroborated by Steve Chandler who has been subpoenaed in this case.

(22) Deana will testify that subsequently, she signed and faxed the requested authorization to WFB and thereafter left the matter in the hands of her attorney. She will further testify that she has never ever received a written denial of her HAMP application as required under the U.S. treasury Directives.

(23) Lastly, Deana will testify as to the amount of attorney fees she has incurred in this case. Her counsel will be filing a motion for attorney fees supported by affidavit and invoices if and when there is a finding in Plaintiffs' favor on two grounds: First under M.G.L. 93A if the Plaintiffs' are allowed to amend their complaint; and secondly, by way of argument that they should be allowed attorney fees as an element of damages (analogous to the allowance of attorney fees in cases where a plaintiff is forced to incur attorney fees in defense of a third-party claim).

Testimony of Steve Chandler:

(24) In addition to corroborating the testimony of Deana Dixon relative to the 5/19/10 telephone conference with WFB, Steve Chandler will testify that he did not understand why an interview had to be conducted prior to receiving a "loan modification package" but to accomplish the task, he received a written authorization from the Dixons to communicate with Wachovia and faxed the authorization to Wachovia. Upon Wachovia's receipt of the authorization, Wachovia than conducted a telephone interview with him wherein they requested the following additional information to complete the interview:

    a. The Dixon's current monthly income.
    b. The average gross monthly income from the prior year.
    c. The amount of money held in bank accounts by the Dixons.
    d. Will the Dixons agree to a mandatory escrow agreement.
    e. What are the Dixon's monthly expenses (loans, utilities, etc.).
    f. How long the Dixon's worked at Frankie D's.

(25)     Steve Chandler will further testify that in a letter dated 6/21/10, he requested that the Dixons provide him with the necessary information to complete the initial interview. Shortly thereafter, some time in July 2010, he received information from Deana Dixon that was responsive to the additional interview questions and he called and communicated this information to Wachovia.

(26)     Steve Chandler will then testify that thereafter neither he nor the Dixons, ever received a further response from Wachovia let alone a "loan modification package" as promised. Mr. Chandler will testify that the whole process seemed convoluted with no real intent or good faith effort on the part of Wachovia to complete the process. Michael Dolan of Wells Fargo will further testify that a loan "modification package" was not sent.

Testimony of the foreclosure attorneys, Ann Marie Maccarrone and Lalitha Rao:

(27)     Thereafter, attorneys from the law firm of Partridge Snow and Hahn (PS&H), Ms. Maccarrone and Rao, will testify that a letter dated August 20, 2010 was sent to Deana and Frank Dixon threatening to foreclosure on their home. Ex. 11. They will further testify that PS&H has in its files correspondence from Attorney Phelps office dated September 22, 2010, in response to their August 20, 2010 letter, indicating that their client was undertaking a loan modification, and that their client had advised the Dixons to stop making loan payments and to submit certain documentation. Ex. 11. They will testify that they have no memory of ever communicating the Dixons' allegations and concerns to Wells Fargo. If Michael Dolan, of Wells Fargo (their Rule 30 (b) (6) deponent) is called to testify, he will testify that no communication took place between the foreclosure department and the modification department as a result of the allegations contained in the letter from the Dixons' counsel.

Testimony of Plaintiff Frank Dixon:

(28)     Frank Dixon will testify that he had very little involvement with the modification application. He will further testify that his wife, Deana, is and was at all relevant time his agent for all purposes, including the modification, and had and has full authority to bind him legally in all respects including the authorization to sign his name.

(29)     Frank Dixon will testify that he was aware of the modification in a general sense and observed his wife's efforts locating documents, speaking with their accountant and attending to the fax of those documents to WFB as well as her frustration and emotional distress.

(30)     Frank Dixon will further testify that since his deposition he has consummated a formal ratification of all action taken by his wife on his behalf, including the signing of his signature to the Hardship Affidavit and IRS Form 4506-T.

Testimony of the Dixon's accountant, Lisa Szargowicz:

(31)     Lisa Szargowicz will testify that she was present during one phone conference with WFB and will corroborate that WFB told Deana not to make any further payments on her mortgage. In addition, if necessary, Lisa Szargowicz will testify as to the Dixons' finances, the financial information that Deana Dixon gave to WFB as well as the availability and pertinence of documents requested by WFB. In particular, Lisa Szargowicz will testify that a P&L is not pertinent to the Dixons because they are not self employed. She will also testify as to the Dixons earnings and expenses, if necessary.

Testimony of the Dixons' Expert Witness, Christopher Wyatt:

(32)     The Dixons will call Christopher Wyatt, 406 Spring Lakes Haven, Spring, Texas 77373 (telephone no. 832-768-4589; email wyattspring@aol.com) as an expert witness in this case.

(33)     Mr. Wyatt's qualifications educational and employment background are: See attached curriculum vitae.

(34)     The subject matter on which each Mr. Wyatt is expected to testify is relative to mortgage servicing issues and includes Wells Fargo's compliance with the Home Affordable Modification Program as required by the United States Treasury rules, directives, supplemental directives and notices.

(35)     The substance of all facts about which Mr. Wyatt is expected to testify include Wells Fargo's failure to: (1) properly train their personnel, (2) provide notices in writing detailing specifically what, if any documents, are missing and required, (3) provide accurate information to the borrower, (4) provide accurate timely information to the borrower, (5) promptly analyze financial information, and (6) follow the HAMP directives, notices and other rules and regulations.

(36)     The substance of all opinions to which Mr. Wyatt is expected to testify is that as a result of Wells Fargo's failure to properly train their personnel, and follow the HAMP directives, supplemental directives, and other mandated U.S. Treasury Rules and regulations, the Dixons were unable to complete an application for a HAMP modification on a timely basis which left the Dixons in limbo and preventing them from avoiding foreclosure by (1) not letting the arrears build to the point where they could not afford to pay them, and (2) not allowing them to pursue other avenues of resolution to avoid foreclosure such as the funding of bankruptcy plans or other means of curing the default under the mortgage documents.

(37)    The grounds for Mr. Wyatt's opinions are based on Mr. Wyatt's personal knowledge and the following material that he has reviewed:

    (a)    The verified complaint.
    (b)    Deposition testimony of Michael Dolan, Wells Fargo's 30 (b) (6) witness and related exhibits.
    (c)    Affidavit and deposition testimony of Deana Dixon and related exhibits.
    (d)    Deposition testimony of Frank Dixon and related exhibits.
    (e)    Wells Fargo's document production.
    (f)    Affidavit and deposition testimony of Steve Chandler and related exhibits.
    (g)    Affidavit and deposition testimony of Lisa Szargowicz and related exhibits.
    (h)    Review and reference of all HAMP directives, supplemental directives, rules, regulations and other material pertinent to the modification period at issue and subsequent.
    (i)    Pertinent HAMP, Congressional, U.S. Treasury, Fannie Mae, performance reports and other materials.

(38)    Mr. Wyatt has been requested to expedite his report based on the fast track of this case and it is hoped that it will be available the latter part of the week beginning September 4, 2011 (or about September 9, 2011). This has been a work-in-progress considering that answers to interrogatories are not yet due, depositions were not completed until September 2, 2011, an expert could not even be located, let alone retained, until last week, and there are still areas of discovery that legitimately should still be considered (e.g. contact with Wells Fargo current and former telephone personnel and their possible depositions as well as reviews of internal policies and Treasury compliance audits, where applicable)

**Defendant's Concise Summary of Evidence to be Offered:**

    Wells Fargo objects to Plaintiffs' Concise Summary of Evidence to be Offered because it consists nearly entirely of purported evidence that is beyond the scope of the pleadings, much of which is being disclosed to Wells Fargo for the first time prejudicially after the parties completed discovery. This Court granted Wells Fargo's Motion to Dismiss, in part, dismissing Plaintiffs' breach of contract claim on May 9, 2011. (Docket Entry 05/09/2011). This Court also denied Plaintiffs' Motion to Amend on August 8, 2011 to add counts for negligence and Chapter 93A "as a futility." The Court held that "[t]he law places no such duty on Wells Fargo to support the negligence count" and that "the plaintiffs have [not] presently suffered any loss of money or property such as would support recovery under Chapter 93A. The case will be tried [on September 12, 2011] solely on the promissory estoppel theory." (Docket Entry 08/08/2011 (emphasis added). No duty or private right of action exists.

    The promissory estoppel claim that the Court permitted to be tried is that "Wells Fargo convinced Plaintiffs that to be eligible for a loan modification they had to default on their payments, and it was _only_ because they relied on this representation and stopped

9

making payments that Wells Fargo was able to initiate foreclosure proceedings. While there is no allegation that its promise was dishonest, Wells Fargo distinctly gained the upper hand by inducing Plaintiffs to open themselves up to a foreclosure action . . . . The bank's promise to consider them for a loan modification if they took those steps [proscribed by the bank] necessarily 'involved as matter of fair dealing an undertaking on [its] part not to [foreclose] based upon facts coming into existence solely from' the making of its promise." (Mem. and Order, Docket Entry No. ("D.E.") 19 at p. 21) (emphasis added) (quoting *McLearn v. Hill*, 276 Mass. 519, 523-24 (1931)).[1] The Court reached this ruling based upon Plaintiffs' allegations in their Verified Complaint and the representations of their counsel during oral argument on Wells Fargo's Motion, representing that this is what occurred.

Wells Fargo will present evidence demonstrating that Plaintiffs' promissory estoppel claim was a total fabrication. Plaintiffs were already months in default on their mortgage prior to any alleged promise or commitment by Wells Fargo to consider them for a loan modification if they defaulted. No promise or commitment was made, and Plaintiffs failed to comply with Wells Fargo's prescribed steps to apply for a modification. Wells Fargo will establish that Plaintiffs did not reasonably rely on Wells Fargo's alleged promise or commitment as an excuse to not pay their mortgage for 18 months before Wells Fargo finally foreclosed. Wells Fargo will present evidence that Plaintiffs lied on their Hardship Affidavit that they submitted to Wells Fargo in support of their modification application, under the penalty of perjury. Indeed, Wells Fargo will show that Plaintiffs had commingled their personal and business accounts and funds and were not only withdrawing very substantial sums in cash and through checks to pay for personal expenses while disguising them to be business expenses, but Plaintiffs also were paying Mr. Dixon's mother's $3,200 per month mortgage over their own approximately $1,200 per month mortgage obligation to Wells Fargo. Plaintiffs were further conducting renovations on their house during this time period which totaled approximately $266,000 and are still ongoing. Wells Fargo will prove that, even without their lies and decisions to spend their substantial resources on everything but the first mortgage on their home with Wells Fargo, Plaintiffs did not qualify for a modification and would have been denied one had they complied with Wells Fargo's instructions to submit its requested documentation. Wells Fargo will also establish that Plaintiffs cannot establish any cognizable damages. Indeed, Plaintiffs claim no damages other than for alleged emotional distress and for attorney's fees, neither of which are recoverable on a promissory estoppel claim.

---

[1] By citing to this Court's ruling on Wells Fargo's Motion to Dismiss, Wells Fargo is neither agreeing with the Court's opinion nor waiving any related right of appeal. Wells Fargo cites to the Court's ruling as the applicable law of the case. Moreover, this is the first opportunity that Wells Fargo has had to introduce evidence in these proceedings. At the time of the preliminary injunction hearing in state court prior to the case's removal, Wells Fargo had not yet appeared in the case, having only been served with notice of the proceedings at 2:55 p.m. on the Thursday before the Monday February 10, 2011 preliminary injunction hearing. (D.E. 4 at p. 44.) Thus, the preliminary injunction hearing took place *ex parte*, when Wells Fargo had not yet appeared in the case and was only served with notice of the preliminary injunction hearing just over one business day before it took place.

## (2) AGREED UPON FACTS

On August 25, 2006, Wells Fargo made a $353,500.00 loan to the Plaintiffs Frank T. Dixon IV a/k/a Frank Dixon and Deana M. Dixon, which was memorialized in an Adjustable Rate Mortgage Note – Pick-A-Payment Loan and secured by a Mortgage on the real property and improvements located at 153 Country Way, Scituate, Massachusetts.

## (3) CONTESTED ISSUES OF FACT

### Plaintiffs' Statement of Contested Issues of Fact

1. Whether or not Wells Fargo followed the procedures as outlined under their own MAP directives in considering the Dixons for a mortgage modification.

2. Whether or not Wells Fargo followed the U.S. Treasury's HAMP directives, supplemental directives, updates, notices and other rules and regulations.

3. Whether or not Wells Fargo had a duty to properly train their personnel and follow the U.S. Treasury's HAMP directives, supplemental directives, updates, notices and other rules and regulations and, if not, whether the breach of such a duty caused the Dixon's harm.

4. Whether or not Wells Fargo had a duty to properly train their personnel and follow the U.S. Treasury's HAMP directives, supplemental directives, updates, notices and other rules and regulations and, if not, whether the breach of such a duty constituted an unfair and deceptive practice perpetrated in trade or commerce which constitutes a violation of the Massachusetts Consumer Protection Statute, M.G.L. c. 93A.

5. Whether or not Wells Fargo followed the HAMP procedures in considering the Dixons for a mortgage modification.

6. Whether or not Wells Fargo instructed the Dixons to stop making any mortgage payments and whether or not the Dixons detrimentally relied on that instruction.

7. Whether Wells Fargo actually and competently reviewed and considered the documentation provided by the Dixons in considering whether the Dixons qualified for a mortgage modification under HAMP or MAP.

8. Whether Wells Fargo followed the HAMP directives and provided the Dixons with written notice detailing accurately and with specificity what documents were missing from their mortgage modification package

9. Whether Wells Fargo promptly provided the U.S. Treasury mandated written notice to the Dixons that their HAMP modification had been denied.

10. Whether the Dixons would have actually qualified for a HAMP.

**Defendant's Statement of Contested Issues of Fact**

1. Wells Fargo objects to Plaintiffs' Statement of Contested Issues of Fact for the same reasons it objected to Plaintiffs' Concise Summary of Evidence to be Offered. The issues identified by Plaintiffs are not relevant to Plaintiffs' promissory estoppel claim. Rather, Plaintiffs attempt to alter their theory of the case to focus on whether Wells Fargo properly followed HAMP directives, trained their employees, and competently considered Plaintiffs for a loan modification. The Court has already twice ruled that these purported claims are barred. No duty or private right of action exists.

2. Whether or for how long Wells Fargo promised or committed to consider Plaintiffs for a mortgage modification.

3. Whether Plaintiffs' claim for promissory estoppel is barred by waiver. (Answer, Seventh Affirmative Defense).

4. Whether Plaintiffs' claim for promissory estoppel is barred by abandonment. (Answer, Eighth Affirmative Defense).

5. Whether Plaintiffs' claim for promissory estoppel is barred by estoppel and/or estoppel by contract. (Answer, Ninth Affirmative Defense).

6. Whether Plaintiffs' claim for promissory estoppel is barred by laches. (Answer, Tenth Affirmative Defense).

7. Whether Plaintiffs' claim for promissory estoppel is barred by Plaintiffs' unclean hands. (Answer, Eleventh Affirmative Defense).

8. Whether Plaintiffs' for promissory estoppel is barred because Plaintiffs did not reasonably rely on Wells Fargo's alleged promise, which alleged promise Wells Fargo denies making. (Answer, Thirteenth Affirmative Defense).

9. Whether Plaintiffs' claim for promissory estoppel is barred because Plaintiffs voluntarily assumed the risk that they would not obtain a modification when they defaulted on their mortgage to Wells Fargo. (Answer, Fourteenth Affirmative Defense).

10. Whether Plaintiffs' claim for promissory estoppel is barred because Wells Fargo's alleged promise, which Wells Fargo denies making, and conduct were not designed to take advantage of Plaintiffs. (Answer, Sixteenth Affirmative Defense).

11.    Whether Plaintiffs' claim for promissory estoppel is barred because Wells Fargo did not engage in a pattern of conduct regarding Plaintiffs which "dangled Plaintiffs on a string."  (Answer, Seventeenth Affirmative Defense).

12.    Whether Plaintiffs' claim for promissory estoppel is barred because Wells Fargo did not mislead Plaintiffs to their detriment.  (Answer, Eighteenth Affirmative Defense).

13.    Whether Plaintiffs' claim for promissory estoppel is barred because Wells Fargo did not induce Plaintiffs to open themselves up to a foreclosure action, nor did Wells Fargo know or intend that Plaintiffs would default believing that their default would lead to a loan modification.  (Answer, Nineteenth Affirmative Defense).

14.    Whether Plaintiffs' claim for promissory estoppel is barred by equitable subrogation.  (Answer, Twentieth Affirmative Defense).

15.    Whether Plaintiffs' claim for promissory estoppel is barred because Plaintiffs failed to perform the conditions which were required for Plaintiffs to apply to be considered for a modification of their mortgage with Wells Fargo.  (Answer, Twenty-First Affirmative Defense).

16.    Whether Plaintiffs' claim for promissory estoppel is barred because Plaintiffs did not establish to Wells Fargo that they qualified for a modification of their mortgage.  (Answer, Twenty-Second Affirmative Defense).

17.    Whether Plaintiffs' claim for promissory estoppel is barred because Plaintiffs did not qualify for a modification of their mortgage with Wells Fargo.  (Answer, Twenty-Third Affirmative Defense).

18.    Whether, Wells Fargo denies that it was at fault, but if Wells Fargo is found to have been at fault, Plaintiffs' claim for promissory estoppel is barred by *in pari delicto* because Plaintiffs were also at fault.  (Answer, Twenty-Fourth Affirmative Defense).

19.    Whether, if Plaintiff sustained any damages as alleged in the Complaint, which Wells Fargo denies, such damages, if any, must be dismissed or reduced due to Plaintiffs' failure to avoid or mitigate them.  (Answer, Twenty-Fifth Affirmative Defense).

20.    Whether, if Plaintiffs sustained any damages as alleged in the Complaint, which Wells Fargo denies, such damages must be off set against the value of the funds, goods, facilities and services that Wells Fargo has provided to Plaintiffs.  (Answer, Twenty-Sixth Affirmative Defense).

21.    Whether, if Plaintiffs sustained any damages as alleged in the Complaint, which Wells Fargo denies, such damages must be off set against all sums due

and owing Wells Fargo by Plaintiffs. (Answer, Twenty-Seventh Affirmative Defense).

22. Whether, if Plaintiffs sustained any damages as alleged in the Complaint, which Wells Fargo denies, such damages were caused by Plaintiffs' own conduct and/or the conduct of third parties for which Wells Fargo is not liable. (Answer, Twenty-Eighth Affirmative Defense).


## (4) JURISDICTIONAL QUESTIONS

### Plaintiffs' Jurisdictional Questions

No such issues exist.

### Defendant's Jurisdictional Questions

Wells Fargo' Thirty-Second Affirmative Defense alleges that "[t]he relief demanded in the Complaint that the Court 'order the Defendant to negotiate a good faith modification agreement' or to return their account to non-default status and re-amortize Plaintiffs' loan balance are barred because neither federal nor Massachusetts law authorize such a mandatory injunction imposing a contractual modification upon Wells Fargo." The Court lacks jurisdiction to impose injunctive or equitable relief upon Wells Fargo which would purport to modify the parties' contractual relationship to return them to a time in their dealings which preceded the filing of Plaintiffs' Complaint and application for an injunction.

## (5) QUESTIONS RAISED BY PENDING MOTIONS

### Plaintiffs' Pending Motions:

(1) Plaintiffs have a pending motion relative to the waiver of the attorney-client privilege relative to the Defendant's inadvertent production of an email that contradicts the Defendant's sworn deposition testimony to the contrary.

(2) Plaintiffs have a motion for instructions as to how to proceed relative to their expert witness, Christopher Wyatt.

(3) Plaintiffs have pending motions to continue the trial date to accommodate the vacation plans of Steven Chandler.

### Plaintiffs' Motions *in Limine*

(4) Motion *in Limine* to prohibit the introduction of evidence relative to the accounting practices and records of their closely held corporation.

(5)     Motion *in Limine* for the court to take judicial notice of HAMP supplemental directives: 09-01, 09-02, 09-03, 09-04, 09-05, 09-06, 09-07, 09-08, 09-09, 09-10, 10-01.

(6)     Motion *in Limine* for reconsideration of the denial of Plaintiffs motion for leave to amend the pleadings to add counts for negligence and violation of the Massachusetts Consumer Protection Statute, M.G.L. c. 93A.

(7)     Motion *in Limine* to prohibit calling Attorney Phelps as a witness at trial.

**Plaintiffs' Discovery Motions**

(8)     Plaintiffs have a pending motion to compel Defendant to:

(a)     Produce their internal MAP policies (Plaintiffs have offered to enter into a voluntary protective order to protect any proprietary information).

(b)     Produce any and all internal MAP and HAMP training manuals, policies and procedures (Plaintiffs have offered to enter into a voluntary protective order to protect any proprietary information).

(c)     Produce all scripts and procedures utilized by employees taking MAP or HAMP information by telephone or any other method (Plaintiffs have offered to enter into a voluntary protective order to protect any proprietary information).

**Defendant's Pending Motions:**

Wells Fargo has agreed to produce a copy of the interview script utilized by its employees who took Plaintiffs' MAP or HAMP information subject to the terms of a suitable and mutually agreeable protective order, the terms of which have not yet been agreed to by the parties or the Court. Wells Fargo has not yet had an opportunity to review Plaintiffs' motions *in limine*, which Plaintiffs appear to be filing contemporaneously with this Joint Pretrial Memorandum, but opposea the relief requested therein as Plaintiffs have set forth above.

**(1)  Motion for Summary Judgment**

Wells Fargo intends to file a motion for summary judgment asserting that it is entitled to judgment as a matter of law for five independent reasons.  First, the evidence is undisputed that Plaintiffs were already in default on their mortgage prior to any alleged promise or commitment by Wells Fargo to consider them for a loan modification if they defaulted.  Second, the evidence is undisputed that Plaintiffs failed to comply with Wells Fargo's prescribed steps to apply for a modification.  Third, Plaintiffs did not reasonably rely on Wells Fargo's alleged promise or commitment as an excuse to not pay their mortgage for 18 months before Wells Fargo finally foreclosed.  Fourth, Plaintiffs did not qualify for a modification.  And Fifth, Plaintiffs cannot establish any cognizable damages

as a matter of law.  Wells Fargo conducted its Local Rule 37.1 conference with Plaintiffs' counsel on September 4, 2011.  Plaintiffs are expected to oppose Wells Fargo's motion.

### (2)  Motions *in Limine*

Wells Fargo intends to offer the following motions *in limine* bearing on the opening statement, trial proceedings and evidence to be introduced at trial.

1.      Motion *in Limine* to exclude testimony or other evidence concerning whether Wells Fargo complied with HAMP or MAP in responding to Plaintiffs' alleged request for a loan modification because this evidence is not relevant to Plaintiffs' promissory estoppel claim and because no private right of action exists for their alleged violation.

2.      Motion *in Limine* to exclude testimony or other evidence concerning whether Wells Fargo took appropriate action in responding to Plaintiffs' alleged request for a loan modification absent a prior showing that Wells Fargo owed Plaintiffs any legal duty, which Wells Fargo denies.

3.      Motion *in Limine* to exclude argument, testimony or other evidence relating to the attorneys' fees incurred by Plaintiffs in connection with this case because attorney's fees are not recoverable on a promissory estoppel claim.

4.      Motion *in Limine* to exclude argument, testimony or other evidence relating to any emotional distress allegedly suffered by Plaintiffs in connection with the facts at issue in this case because emotional distress is not recoverable on a promissory estoppel claim.

5.      Motion *in Limine* to exclude argument, testimony or other evidence relating to the so-called "foreclosure crisis" because it is entirety irrelevant to the specific facts at issue in this case, and would be unfairly prejudicial to Wells Fargo.

## (6) CONTESTED ISSUES OF LAW

### Plaintiffs' Statement of Contested Issues of Law

(1)      Whether, following the fact discovery completed thus far, the Plaintiffs should be granted leave to amend the complaint to include counts for negligence and violations of M.G.L. c. 93A.

### Defendant's Statement of Contested Issues of Law

(1)      Wells Fargo objects to Plaintiffs' Statement of Issues of Law for the same reasons it objected to Plaintiffs' Concise Summary of Evidence to be Offered and Plaintiffs' Statement of Issues of Fact.  This Court denied Plaintiffs' Motion to Amend on August 8, 2011 to add counts for negligence and Chapter 93A "as a futility."  The Court held that "[t]he law places no such duty on

Wells Fargo to support the negligence count" and that "the plaintiffs have [not] presently suffered any loss of money or property such as would support recovery under Chapter 93A. <u>The case will be tried [on September 12, 2011] solely on the promissory estoppel theory</u>." (Docket Entry 08/08/2011 (emphasis added). No duty or private right of action exists.

(2)    Whether Plaintiffs presently are seeking to adjudicate a cognizable claim for promissory estoppel.

(3)    Whether Plaintiffs abandoned their claim that Wells Fargo was obligated to grant them a modification of their mortgage during oral argument on Wells Fargo's Motion to Dismiss. (Answer, Second Affirmative Defense).

(4)    Whether, except for Plaintiffs' claim for promissory estoppel on the ground that Wells Fargo allegedly promised Plaintiffs that it would consider them for a mortgage modification if they defaulted, Plaintiffs' claims are barred by the Court's Memorandum and Order dated July 22, 2010, Dkt. No. 19 at p. 44. (Answer, Third Affirmative Defense).

(5)    Whether Plaintiffs' claim for promissory estoppel is barred by the terms and conditions of their binding, voluntary, written loan agreement with Wells Fargo. (Answer, Fourth Affirmative Defense).

(6)    Whether Plaintiffs' claim for promissory estoppel is barred by the statute of frauds, M.G.L. c. 259, § 1, and/or the parole evidence rule. (Answer, Fifth Affirmative Defense).

(7)    Whether Plaintiffs' claim for promissory estoppel is barred because Wells Fargo owed Plaintiffs no legal duty. (Answer, Sixth Affirmative Defense).

(8)    Whether Plaintiffs' claim for promissory estoppel is barred because Wells Fargo's alleged promise, which alleged promise Wells Fargo denies making, was impermissibly vague, indefinite and uncertain to be enforceable. (Answer, Twelfth Affirmative Defense).

(9)    Whether Plaintiffs' claim for promissory estoppel is barred because the alleged commitment, which Wells Fargo denies making, could at most be an agreement to agree or an agreement to negotiate, which are not enforceable under the laws of Massachusetts. (Answer, Fifteenth Affirmative Defense).

(10)    Whether Plaintiffs' allegations and claims, as attempted to be presented or presented at trial, are barred and preempted by the Home Owners' Loan Act, ("HOLA"), 12 U.S.C. § 1461, et seq., and its implementing regulations, including 12 C.F.R. § 560.2, articulated by the Treasury Department's Office of Thrift Supervision ("OTS"). (Answer, Twenty-Ninth Affirmative Defense).

(11)     Whether Plaintiffs' allegations and claims, as attempted to be presented or presented at trial, are barred because they would improperly infringe Wells Fargo's freedoms to contract or not to contract.  (Answer, Thirtieth Affirmative Defense).

(12)     Whether Plaintiffs' allegations and claims, as attempted to be presented or presented at trial, are barred because they would improperly and inequitably shift the risk of loss or damage resulting from the parties' alleged pre-negotiations or negotiations to Wells Fargo.  (Answer, Thirty-First Affirmative Defense).

(13)     Whether the relief demanded in the Complaint that the Court "order the Defendant to negotiate a good faith modification agreement" or to return their account to non-default status and re-amortize Plaintiffs' loan balance are barred because neither federal nor Massachusetts law authorize such a mandatory injunction imposing a contractual modification upon Wells Fargo. (Answer, Thirty-Second Affirmative Defense).

(14)     Whether Plaintiffs may claim entitlement to their attorney's fees on their promissory estoppel claim.

(15)     Whether Plaintiffs may claim entitlement to damages for emotional distress on their promissory estoppel claim.

(16)     Whether injunctive relief is available or appropriate, and if so, its permitted scope.


## (7) ANY REQUESTED AMENDMENT TO THE PLEADINGS

### Plaintiffs' Requested Amendment to the Pleadings

Plaintiffs request that the court reconsider its denial of their prior motion to amend and add counts for negligence and violations of 93A.  These counts would not require any additional facts beyond those facts that will be necessary under the Plaintiffs' Promissory Estoppel claim and the amendments, the Plaintiffs respectfully suggest, are not futile in that discovery has disclosed that through the Defendant's acts of malfeasance and nonfeasance it has failed to follow the U.S. Treasury guidelines expressly promised to the Plaintiffs and which failures Plaintiffs contend are, in addition to the breach of a specific promise to implement the federal HAMP guidelines, negligent and constitute unfair and deceptive practices in trade or commerce which violate M.G.L. 93A, the latter of which would entitle the Plaintiff to their attorney fees in litigating this action.

### Defendant's Objection to Plaintiffs' Requested Amendment to the Pleadings

Wells Fargo objects to Plaintiffs' Requested Amendment to the Pleadings for the same reasons it objected to Plaintiffs' Concise Summary of Evidence to be Offered,

Plaintiffs' Statement of Issues of Fact, and Plaintiffs' Statement of Issues of Law. Plaintiffs' requested amendments are not relevant to Plaintiffs' promissory estoppel claim. Rather, Plaintiffs attempt to alter their theory of the case to focus on whether Wells Fargo properly followed HAMP directives, trained their employees, and competently considered Plaintiffs for a loan modification. The Court has already twice ruled that these purported claims are barred. No duty or private right of action exists.

## (8) ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

No such matters exist.

## (9) LENGTH OF TRIAL AND TYPE OF TRIAL

This will be a jury trial and will last approximately 3-4 days.

## (10) WITNESS LIST

### Plaintiffs' Fact Witnesses:

Deana Dixon: 153 Country Way, Situate Massachusetts

Frank Dixon: 153 Country Way, Situate Massachusetts

Steven Chandler 180 Highland Ave, Quincy Massachusetts

Lisa Szargowicz previously of Raymon Pielech Zexter P.C. 700 Pleasant Street, Third Floor New Bedford, Massachusetts

Ann Marie Maccarrone of Partridge Snow and Hahn, 2364 Post Road, Suite 100, Warwick, R.I.

Lalitha Rao of Partridge Snow and Hahn, 2364 Post Road, Suite 100, Warwick, R.I.

Kris Fernandez, KR Bookkeeping, Bookkeeper for the Law Office of Gerald A. Phelps, 94 Walnut Street, Abington, MA 02351.

Although the Dixons do not presently intend to call Attorney David Bizar as a witness at trial, the Dixons reserve the right to do so with reference to the limited waiver of the attorney-client privilege issue which is the subject of a pending motion.

Although the Dixons do not presently intend to call Attorney Jonathan Lent as a witness at trial, the Dixons reserve the right to do so with reference to the limited waiver of the attorney-client privilege issue which is the subject of a pending motion.

Although the Dixons do not presently intend to call Attorney Zachry Berk as a witness at trial, the Dixons reserve the right to do so with reference to the limited waiver of the attorney-client privilege issue which is the subject of a pending motion.


**Expert Witnesses:**

Christopher Wyatt
406 Spring Lakes Haven
Spring, Texas 77373
Phone: 832-768-0003
Email: wyattspring@aol.com


**Defendant's Objection to Plaintiff's Proposed Expert Witness**

Wells Fargo objects to Plaintiffs' designation of Christopher Wyatt as a purported expert witness. Mr. Wyatt's proposed expert testimony is completely irrelevant to Plaintiffs' promissory estoppel claim. Additionally, Plaintiffs' disclosure of the existence of Mr. Wyatt on September 4, 2011, eight days before the scheduled trial date, is patently unreasonable. The Federal Rules of Civil Procedure require that "[a]bsent a stipulation or court order, the [expert] disclosures must be made . . . at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. Pro. 26(a)(2)(D)(i). The Rules require the party offering the expert witness to disclose their proffered testimony "in a written report—prepared and signed by the witness—if [as here] the witness is one retained or specifically employed to provide expert testimony in the case . . . ." Fed. R. Civ. Pro. 27(a)(2)(B). The report is required to contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous ten years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of compensation to be paid for the study and testimony in the case." No such expert report has been provided to Wells Fargo. Additionally, the Federal Rules of Civil Procedure afford Wells Fargo the right to "depose any person who has been identified as an expert whose opinions may be presented at trial" and mandate that in a case like this one where an expert report must be provided, "the deposition may be conducted only after the report is provided." Fed. R. Civ. Pro. 26(a)(4). Wells Fargo would have to be given an opportunity to challenge the proposed expert's qualifications and opinions before they could be presented to the jury. Further, Wells Fargo would have to be afforded sufficient time to retain, designate, disclose it's counter-expert pursuant to Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure, who, following their report, Plaintiffs would then have the right to depose and challenge. Meanwhile, none of this is relevant to the case. Plaintiffs' disclosure of this purported expert witness on the eve of trial is nothing more than a naked attempt to delay the trial proceedings to

permit Plaintiffs to continue living in their home while not paying their mortgage to Wells Fargo (for the past two years and counting).

**Defendant's Objection to Plaintiff's Proposed Witness Kris Fernandez**

Wells Fargo objects to Plaintiffs' designation of Kris Fernandez as a purported fact witness. Plaintiffs did not disclose Kris Fernandez either in its Rule 26(a) Initial Disclosures or otherwise during discovery. Plaintiffs only disclosed the existence of Mr. Fernandez today, September 5, 2011. Thus, under Rule 37, Plaintiffs should not be permitted to call this purported fact witness at trial.

**Defendant's Fact Witnesses**

Michael Dolan, Operations Analyst, Wells Fargo

Lisa Szargowicz previously of Raymon Pielech Zexter P.C. 700 Pleasant Street, Third Floor New Bedford, Massachusetts

Deana Dixon: 153 Country Way, Situate Massachusetts

Frank Dixon: 153 Country Way, Situate Massachusetts

Keeper of Records of Rockland Trust Company, 288 Union Street, Rockland, MA 02370; (781) 982-6119

Keeper of Records of Raymon Pielech Zexter PC, 700 Pleasant Street, 3rd Floor, New Bedford, MA 02740; (508) 999-4548

Although Wells Fargo does not presently intend to call Steven Chandler 180 Highland Ave, Quincy Massachusetts, as a witness at trial, Wells Fargo reserves the right to do so.

Although Wells Fargo does not presently intend to call Gerald Phelps, 11 Lampost Drive, Halifax, MA 02339, as a witness at trial, Wells Fargo reserves the right to do so.

**(11)  EXHIBIT LIST**

**PLAINTIFFS' PROPOSED EXHIBIT LIST:**

Agreed to Exhibits:

1. September 24, 2009 Fax Transmission from Deana Dixon to Wells Fargo: WFB_DIX_ 000435 through 000499.
2. November 23, 2009 Fax Transmission from Deana Dixon to Wells Fargo: WFB_DIX_ 000222 through 000283.
3. December 30, 2009 Fax Transmission from Deana Dixon to Wells Fargo: WFB_DIX_ 000284 through 000348

4. Wells Fargo log notes: WFB_DIX_000002 through WFB_DIX_000006 and WFB_DIX_000035 through WFB_DIX_000042.
5. Wells Fargo phone logs: WFB_DIX 001424 through 1427.
6. Wells Fargo letter and blank loan modification package: WFB_DIX_ 000018 through 000030.
7. WFB letter to Plaintiffs: WFB_DIX 001450.
8. Desk top valuation report performed by Wells Fargo on 10/05/2009: WFB_DIX_ 000016 through 000017.
9. Dixons IRS Transcript for tax year ending 12/31/2008.
10. Letter from Partridge Snow and Hahn LLP to Deana and Frank Dixon dated 8/19/2010.
11. Authorization to speak with Attorney Gerald A. Phelps: WFB_DIX_ 000192 through 000193.

Plaintiffs' Proposed Exhibits to Which Wells Fargo Objects:

A. Letter from Attorney Gerald A. Phelps to Partridge Snow and Hahn LLP dated 9/22/2010.
B. Treasury Department Supplemental Directive 09-01.
C. Treasury Department Supplemental Directive 09-02.
D. Treasury Department Supplemental Directive 09-03.
E. Treasury Department Supplemental Directive 09-04.
F. Treasury Department Supplemental Directive 09-05.
G. Treasury Department Supplemental Directive 09-06.
H. Treasury Department Supplemental Directive 09-07.
I. Treasury Department Supplemental Directive 09-08.
J. Treasury Department Supplemental Directive 09-09.
K. Treasury Department Supplemental Directive 09-10.
L. Treasury Department Supplemental Directive 10-01.
M. Expert report of Christopher Wyatt.
N. Ratification of Frank Dixon.
O. M.G.L. c. 93A Statutory Demand Letter.
P. Letter from Steve Chandler of 6/21/10 to Deana.
Q. Chandler notes.
R. Billing from the Law Office of Gerald Phelps.

**DEFENDANT'S PROPOSED EXHIBIT LIST:**

Agreed to Exhibits

1. Fax confirmation page from Law Offices regarding 5/20/10 Letter from Deana M. Dixon to Wachovia Mortgage (Depo Ex. 4)
2. Fax confirmation page from Law Offices regarding 5/20/10 Letter from Deana M. Dixon to Wachovia Mortgage (Depo Ex. 5)
3. Letter from Deana M. Dixon to Wachovia Mortgage (Depo Ex. 6)
4. Profit & Loss Statement through May 2010 (Depo Ex. 10)

5. Letter from Steven Chandler to Deana Dixon (signed) (Depo Ex. 11)
6. Verified Complaint for Injunctive Relief, Specific Performance and Damages (Depo Ex. 16)
7. Adjustable Rate Mortgage Note (Depo Ex. 18)
8. Mortgage (Depo Ex. 19)
9. Biweekly Electronic Funds Transfer Authorization (Depo Ex. 20)
10. Escrow Account Agreement (Depo Ex. 21)
11. Residential Loan Application (Depo Ex. 29)
12. Residential Loan Application (unsigned) (Depo Ex. 30)
13. Home Affordable Modification Program Hardship Affidavit (Depo Ex. 31)
14. Homeowner Anniversary Payment Notice (Depo Ex. 32)
15. Mortgage (Depo Ex. 35)
16. Rockland Trust Account Statement (Depo Ex. 36)
17. Rockland Trust Account Statement (Depo Ex. 37)
18. Rockland Trust Account Statement (Depo Ex. 38)
19. Notice of Intention to Assess (Depo Ex. 39)
20. Payment Request (Depo Ex. 40)
21. Payment Request (Depo Ex. 41)
22. Payment Request (Depo Ex. 42)
23. Notice of Default, Demand and Possible Acceleration (Depo Ex. 43)
24. Notice of Default, Demand and Possible Acceleration (Depo Ex. 44)
25. Email from Wachovia ESupport to Deana Dixon (Depo Ex. 45)
26. Weekly EFT Cancellation (Depo Ex. 46)
27. Notice of Proposed Determination of Personal Liability and Deemed Assessment (Depo Ex. 47)
28. Payment Request (Depo Ex. 48)
29. Request for modification paperwork (Depo Ex. 49)
30. Request for modification paperwork (Depo Ex. 50)
31. Fax from Deana Dixon to Wachovia regarding Loan Modification (Depo Ex. 51)
32. Notice regarding close of modification request (Depo Ex. 52)
33. Pre-foreclosure reinstatement quote (Depo Ex. 53)
34. Request for additional documents for loan modification (Depo Ex. 54)
35. Fax from Deana Dixon to Wachovia forwarding Loan Modification documents dated 9/23/09 (Depo Ex. 55)
36. Notice of Default, Demand and Possible Acceleration (Depo Ex. 57)
37. Letter from Randy Denton to Frank Dixon regarding Short Sale (Depo Ex. 58)
38. Fax from Law Office forwarding 5/20/10 Letter from Deana Dixon (Depo Ex. 59)
39. Receipt of authorization to communicate with Gerald Phelps (Depo Ex. 60)
40. Letter from Steven Chandler to Deana Dixon (Depo Ex. 61)
41. Letter from Lalitha Rao to Frank Dixon (Depo Ex. 63)
42. Letter from Lalitha Rao to Deana Dixon (Depo Ex. 64)
43. Letter from Ann Marie Maccarone to Deana Dixon (Depo Ex. 66)
44. Letter from Ann Marie Maccarone to Frank Dixon (Depo Ex. 67)
45. Letter from Amy Monahan to Frank Dixon (Depo Ex. 68)
46. Mortgage Payment Assistance (Depo Ex. 69)

47. Letter from David Bizar to Gerald Phelps regarding second verification of Dixons' debt (Depo Ex. 71)
48. Mortgage (Depo Ex. 72)
49. Letter for N. Ranatou to Lisa Szargowicz (Depo Ex. 75)
50. W-2 from Whole Foods Market (Depo Ex. 78)
    W-2 from Harbor Donuts
    W-2s from Double Dixon
51. Whole Foods paystubs for Deana Dixon (Depo Ex. 79)
52. Double Dixon paystubs (Depo Ex. 80)
53. Call log (Depo Ex. 81)
54. Modification Notes (Depo Ex. 82)
55. Call Notes (WFB_DIX_001883 – 1907)
56. Consolidated Notes Log (WFB_DIX_001378 – 1422)
57. Call Notes (WFB_DIX_001882)
58. Rockland Trust Bank Account Statements (DIXON Doc. No. 164-198)
59. Letter from Department of the Treasury Re: Federal Employment Tax (DIXON Doc. No. 573-577)
60. Department of the Treasury Documents (DIXON Doc. No. 578-580)
61. Letter from Lisa Szargowicz to Mary McLaughlin (DIXON Doc. No. 581)
62. Customer Account Activity Statement (WFB_DIX_000677-686)
63. Payment Histories (WFB_DIX_000657-676; WFB_DIX_001458-1489; WFB_DIX_001490-1508)
64. Loan Statements (WFB_DIX_001840-1879)
65. Letter to Frank Dixon (WFB_DIX_001137-1138)
66. Letter to Frank Dixon (WFB_DIX_001139-1140)
67. Massachusetts DOR Payment Coupons (DIXON Doc. No. 417-479)
68. Letter (DIXON Doc. No. 395)

Wells Fargo's Exhibits to Which Plaintiffs Object:

A. Fax enclosing documents from the bank (Depo Ex. 13)
B. Fax enclosing documents to Wachovia from Deana Dixon dated 9/23/09 (Depo Ex. 14)
C. Email between Gerald Phelps and Lisa Szargowicz (Depo Ex. 15)
D. Experian Credit Report for Frank Dixon (Depo Ex. 22)
E. Email from Gerry Phelp to David Bizar (Depo Ex. 24)
F. Plaintiffs' Response to the Defendant's First Request for the Production of Documents (Depo Ex. 27)
G. Plaintiffs' Response to the Defendant's Second Request for the Production of Documents (Depo Ex. 28)
H. Defendant's First Set of Interrogatories (Depo Ex. 34)
I. Notice regarding incomplete Home Affordable Modification Program (Depo Ex. 56)
J. Execution (Depo Ex. 62)
K. Credit Profile Report for Deana Dixon (Depo Ex. 73)
L. Execution (Depo Ex. 74)

M. Raymond Pielech Zexter PC documents (Depo Ex. 76)
N. Raymond Pielech Zexter PC documents (8/19/11 Production)

Respectfully submitted,

Frank and Deana Dixon
By their Attorneys,

__/s/ Gerald A. Phelps_____
Gerald A. Phelps (BBO# 555307)
Peter J. Hamilton II (BBO# 673070)
11 Lamppost Drive
Halifax, MA 02338
(781) 754-0825

Respectfully submitted,

WELLS FARGO BANK, N.A., successor by
merger to WELLS FARGO BANK SOUTHWEST,
N.A., f/k/a WACHOVIA MORTGAGE, FSB., f/k/a
WORLD SAVINGS BANK, FSB

By its attorneys,

__/s/ David M. Bizar_____
David M. Bizar (BBO # 566795)
dbizar@seyfarth.com
Jonathan W. Lent (BBO # 655235)
jlent@seyfarth.com
Seyfarth Shaw, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Telephone: (617) 946-4874
Facsimile: (617) 790-5368

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on September 5, 2011, by first class mail.

*/s/ David M. Bizar*
David M. Bizar